## WALSTER v. UNITED STATES.

*(Circuit Court, N. D. New York. July 11, 1890.)*

1. LARCENY FROM MAILS—INDICTMENT—ALLEGATIONS AND PROOF.
   On an indictment in several counts against an employe of a post-office for embezzling letters, if the proof conforms to the averments in one of the counts in respect of the description of the letters and of the capacity in which defendant was intrusted with them, a motion to acquit on all the counts is properly overruled, though the proof varies from the allegations in the other counts as to those particulars.

2. SAME—CONSTRUCTION OF STATUTES.
   Letters stamped and postmarked as coming from other offices, but which in fact are placed upon the distributing table by the postmaster and an inspector, addressed to a company in the same town, which gets its mail from the office in a pouch of its own, are, if the postmaster and inspector do not intend to intercept them before delivered to the proper address, letters "intended to be conveyed by mail," within the meaning of Rev. St. U. S. § 5467, making it an offense for any postal employe to embezzle any letter coming into his possession which was intended to be conveyed by mail, or to be forwarded through or delivered from any post-office.

3. SAME—DECOY LETTERS.
   The fact that they were decoy letters is immaterial on a prosecution for their embezzlement.

Error to District Court.
*James Bacon*, for plaintiff in error.
*D. B. Alexander*, U. S. Atty.

WALLACE, J. This is a writ of error to the district court to review a conviction of the plaintiff in error for embezzling letters intended to be conveyed by mail, and containing articles of value, he being at the time a person employed in the postal service. The indictment contains eight counts, and is based upon section 5467, Rev. St. U. S. Of the eight counts, all but the first, third, fifth, and seventh were withdrawn from the consideration of the jury by the court upon the trial. There was a general verdict of guilty of the offenses charged in the indictment, and a sentence to imprisonment for the term of two years.

There was sufficient evidence upon the trial to justify the jury in finding that on the morning of January 19, 1890, the accused, while engaged in assorting and distributing mail-matter, abstracted four letters from the distributing table of the mail-room in the post-office at Elmira,

retired to a water-closet adjoining the room, and then broke open the letters, and appropriated the government notes, bank-bills, and postage-stamps which they contained. He was a letter-carrier, and on the occasion in question had assisted several other carriers and clerks in assorting the mail and distributing the letters to the different receptacles, whence they were to be taken away by carriers, or delivered at the office to those to whom they were addressed. While thus engaged· he was watched by the postmaster and a post-office inspector from a place of concealment, and when the mail was fully distributed he was seen to retire to a water-closet adjoining the mail-room. He remained there a few minutes, came out, and attended to other duties about the office for a few moments, and was then called into the postmaster's room and searched, and the contents of the letters were found upon his person. The letters thus abstracted were decoy letters, which had been prepared by Mr. Camp, a post-office inspector, acting in concert with Mr. Flood, the postmaster, with a view to ascertain who, if any, of the employes of the office was tampering with the mails. The inspector and postmaster had caused several such letters to be prepared, among them nine addressed to the Telegram Company, a publishing concern at Elmira, and to be stamped and postmarked as if mailed from other post-offices. They had inclosed government notes, bank-bills, and postage stamps in these letters, and had caused the letters to be placed with the incoming morning mail, which had been dumped upon the distributing table. When put with the rest of the mail, they were apparently letters which had arrived that morning from other post-offices for distribution and delivery at Elmira, according to the usual course of business. The customary way of delivering matter addressed to the Telegram Company was to put the letters by themselves in a rack, whence they were taken away in a pouch belonging to the company when called for. When the accused went to the water-closet it was found that but five of the nine decoy letters addressed to the Telegram Company were in the rack. Upon being informed of this circumstance the postmaster and inspector took possession of these letters, and kept them. The evidence presented a question of fact whether it was the purpose of the inspector and postmaster to permit the decoy letters to be delivered to the Telegram Company in the ordinary way, in case they were not abstracted, or whether it was their purpose, when they put them with the mail-matter on the distributing table, to resume control of them after distribution, but before delivery to the company, provided they were not abstracted.

The rulings of the judge upon the trial which were excepted to by the accused, and as to which error is now assigned, present the questions whether there was a variance between the evidence and the averments of the indictment which required the acquittal of the accused, and whether the letters, inasmuch as they were not mailed in the usual way, but were placed by the postmaster on a distributing table in the office with mail-matter that had already arrived, were letters intended to be conveyed by mail, within the meaning of the statute. Each of the five counts upon which the conviction proceeds avers that the embezzled

letter was one "intended to be conveyed by mail," and none of them avers that it was a letter intended to be carried by an employe, or intended to be delivered from a post-office. The first and fifth counts aver that the letter described had been intrusted to the accused as a letter-carrier, and had come into his possession as such letter-carrier. The third count avers that the letter described had been intrusted to the accused as a clerk in the post-office, and had come into his possession as such clerk. The seventh count avers that the letter described had been intrusted with the accused as a clerk and mail-carrier, and had come into his possession as such clerk and mail-carrier. The first and seventh counts describe the letter as one containing certain specified articles of value, which were then and there the goods and chattels of the Telegram Company; the third count describes the letter as one containing specified articles of value, which were then and there the goods and chattels of Bushrod II. Camp; and the fifth describes the contents of the letter as the goods and chattels of Martin F. Butcher.

The court was moved to direct an acquittal of the accused because the evidence was that the contents of the letters were the goods and chattels of Mr. Camp, and it did not appear that the letters were intrusted or came to the possession of the accused as a letter-carrier, and there was therefore a variance from the averments of the indictment. This motion was denied, and an exception allowed. The evidence indicated that the contents of the letters belonged to Mr. Camp, and there was none tending to show that the contents of any of the letters were the property of the Telegram Company, as averred in the first or seventh counts, or of Mr. Butcher, as averred in the fifth count. The evidence also indicated that carriers at the Elmira post-office were sometimes required to assist in the distribution of the mail. Inasmuch as the accused was not indicted for stealing the contents of the letters, but for embezzling the letters themselves, it was unnecessary to aver in the indictment that the contents were the property of any particular person. It would have sufficed to describe the letters and their contents sufficiently for identification, and state the value of the several articles of the contents. Nor was it necessary to aver that the letters were intrusted to the accused, or came to his possession as a clerk or as a carrier. It would have sufficed to aver that he was a letter-carrier at the time the letters came into his possession. It is a familiar rule that every allegation of an indictment, whether it be necessary or unnecessary, which is descriptive of the identity of the subject of an offense like larceny or embezzlement, must be proved as laid, and the unnecessary descriptive matter cannot be rejected as surplusage. Thus in *U. S.* v. *Foye*, 1 Curt. 364, the indictment described the embezzled letter as one intended to be conveyed by post "from Georgetown to Ipswich," and the court held that, although it was only necessary to allege that the letter was intended to be conveyed by post, the additional descriptive matter could not be rejected as surplusage, and, not having been proved, there was a variance. It is unnecessary to decide whether there was a variance in the present case or not. The third count of the indictment conformed to the proof in respect to the description of the letter

embezzled, and the evidence was such as to authorize the jury to find that the accused was acting in a clerical capacity, and was intrusted with the letter in that capacity, as is charged in that count.   If the objection of variance had been presented by a motion to direct the acquittal of the accused upon all the counts except the third, it would have been sufficiently raised, and perhaps would have been well taken.   But the district judge was not requested to rule on the sufficiency of the evidence to sustain any particular count or counts, and it would have been erroneous to direct an acquittal when the evidence authorized a conviction upon the third count.

· The more difficult question in the case is whether the letters abstracted were, under the peculiar circumstances, letters intended to be conveyed by mail within the meaning of the statute.   If the indictment had charged that the several letters were intended to be delivered from the post-office at Elmira, the averment, assuming that the postmaster or inspector did not intend to intercept the letters before delivery, would have conformed to the facts.   But as it is averred in each count that the letter embezzled was one intended to be conveyed by mail, it was necessary to prove upon the trial that it belonged to that category of mail-matter; and, if the jury were not correctly instructed as to the meaning of the term "intended to be conveyed by mail," the exceptions of the accused were well taken.   Upon this question the judge instructed the jury, in substance, that the accused was not guilty of the offense charged in the indictment, if they found that the postmaster or inspector intended to immediately resume control of the letters before they were delivered to the Telegram Company in the usual way, provided they were not abstracted; but if it was the intention of these officers to permit them to be delivered to the pouch of the Telegram Company, by any of the employes of the office, they were letters intended to be conveyed by mail, and the fact that they were decoy letters was of no consequence.   He refused to instruct the jury that the letters were not intended to be conveyed by mail because they were not mailed in the way letters are usually mailed, or were not ordinary mail-matter.   Section 5467 makes it an offense on the part of any employe of the postal service to secrete, embezzle, or destroy any letter coming into his possession which was (1) intended to be conveyed by mail; (2) to be carried or delivered by any employe in the postal service; or (3) to be forwarded through or delivered from any post-office.   The statute is not to be enlarged by construction beyond the necessary meaning of its terms, nor interpreted to embrace a case which may or may not be within the legislative contemplation; but it is not to be construed so strictly as to cripple the reasonable meaning of the phraseology, and exclude offenses fairly within its language.   As is said by Mr. Sedgwick, (St. & Const. Law, 2d Ed., 282:)

"The rule that statutes of this class are to be construed strictly is far from being a rigid. unbending one; or, rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the

punishment to cases which are not clearly embraced in them, and, on the other, equally refusing, by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope,"

Letters like those in the present case, assuming that they were not to be intercepted by the postmaster before delivery to the Telegram Company, fall distinctly within the category of letters intended to be "delivered from any post-office," and satisfy that descriptive term in the section. The question is whether such letters are also within the other category of the section, and are described by the term "intended to be conveyed by mail." If the latter descriptive term were the only one employed in the section to describe the letters which are the subject of embezzlement, the question would be less doubtful. As it is, there is certainly fair room for argument that both descriptive terms are not used to define the same thing. Although the term "to be conveyed by mail" is hardly appropriate to describe a letter which is to be carried by hand from one receptacle to another in the same post-office, yet its meaning is amplified by section 5468, which declares that the fact that a letter has been deposited in any authorized depository for mail-matter, or in charge of any postmaster, or of any clerk, carrier, agent, or messenger of the postal service, shall be evidence that it was intended to be conveyed by mail. This section makes the depositing of the letter, irrespective of any other incident of transmission, the criterion whether it is intended to be conveyed by mail, and implies that a letter handed to a clerk in a post-office, for delivery at the same office to the person to whom it is addressed, may be intended to be conveyed by mail. Unless the word "deposited" has some limited meaning, a letter handed by one clerk to another at any stage of transmission, for the purpose of forwarding its delivery, is intended to be conveyed by mail, within the meaning of section 5467. Section 5468 includes a letter deposited with any agent or messenger employed in any department of the postal service, and, in many cases which are supposable, letters thus deposited would not be intrusted to such employe in the way mail-matter is commonly deposited. I conclude, therefore, that the word "deposited" is used in the sense of "intrusted," and refers to mail-matter left in any way for official transmission with an employe in the course of his employment; and that the letters intended to be conveyed by mail of section 5467 embrace all the other described classes of that section, and that the further enumeration is only another instance of the tautology which is not uncommon in legislative acts. The manifest purpose of the statute is to protect all letters confided to the care of the postal department for official transmission from embezzlement or improper appropriation by employes during the course of their transmission, and throughout the time they are in any manner in the custody of the officers or agents of the department. It would seem to be a very unreasonable construction of the statute to hold that a letter handed to the postmaster outside the office, and placed by him in a bag of outgoing mail-matter for transmission, would not be within its protection. If such a letter would be the subject of the offense, clearly letters mailed as these were would be also.

Certainly the circumstance that the letter is a decoy letter is quite immaterial. If a letter is put in course of transmission, with a view of having it conveyed by mail, it matters not what the motive of the sender may be. This has been repeatedly decided. *U. S.* v. *Cottingham*, 2 Blatchf. 470; *U. S.* v. *Foye, supra; U. S.* v. *Matthews*, 35 Fed. Rep. 890; *U. S.* v. *Wight*, 38 Fed. Rep. 106. The conclusion reached is sanctioned by the case of *U. S.* v. *Matthews*, 35 Fed. Rep. 891. In that case the letter was a decoy letter, not mailed in the ordinary way, but placed among the letters of a mail upon a dumping table for backing and distribution; and it was held that the facts were undoubtedly competent evidence to show that the letter was intended to be conveyed by mail, and were sufficient to bring the case within the statute, if it had not appeared that there was a question whether it was not the intention of the inspector who caused the letter to be deposited to intercept it before it would be carried and delivered to its proper address.

The instructions given to the jury were correct, and the instructions refused were correctly refused. It follows that none of the exceptions taken on the trial were well founded, and the judgment of the district court should be affirmed.